Jones, J.
(dissenting). While I would agree with the majority’s conclusion that there exists a rational basis in the record sufficient to sustain the Board of Regents’ determination denying petitioners’ application for a provisional *199 charter were that the only issue, I cannot agree that there was not a tender of proof sufficient, on a motion for summary judgment, to require a hearing on the issue of administrative abuse, which, if found to have occurred might be judged to have vitiated what would otherwise have been accepted as a rational determination.
It is well settled that summary judgment is a drastic remedy, to be granted only when it appears that no material and triable issues of fact are presented (e.g., Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439). While mere conclusory allegations will never suffice to defeat a motion for summary judgment (e.g., Shaw v Time-Life Records, 38 NY2d 201; Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338), where there is doubt as to the existence of such issues, or even if the issues are “arguable”, summary judgment should not be granted (Barrett v Jacobs, 255 NY 520). To avoid the imposition of the drastic remedy, the motion’s opponent must tender proof of facts sufficient to require a trial of any issue of fact (CPLR 3212, subd [b] ; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065). In this case petitioners have met this burden.
Petitioners contended they were denied their right to an impartial administrative consideration of their application. Specifically, they assert that the Board of Regents, or at least certain of its members, were biased, and that the board prejudged their application for a provisional charter and otherwise abused the administrative process in a calculated effort designed to prevent certification of the Unification Theological Seminary. In support of these contentions, over 600 pages of exhibits, affidavits, letters and other documentary proof were tendered, a sampling of which illustrates that petitioners made a sufficient factual showing to entitle them to present this branch of their case at a full hearing.
There was before Special Term an affidavit of former Commissioner of Education Ewald B. Nyquist, who had been Commissioner of Education for a period of over seven years and during more than 25 years’ service with the Department of Education had been “directly involved in investigating, evaluating, reviewing and supervising the *200 processing of applications from numerous institutions which applied for Provisional Charters”, and who was commissioner-at the time of petitioners’ application. On the basis of such experience and with personal knowledge of a substantial portion of the investigation, evaluation and review of petitioners’ application and individual participation in the decision-making process related thereto prior to Jtme 30, 1977, he stated, inter alia: that “members of the Board of Regents and staff of the State Education Department * * * acted in an arbitrary, capricious and discriminatory manner”; that they “delayed making a decision on the application for an unconscionable length of time in the hope of uncovering negative findings on which to base a denial”; that “after almost two years of investigation and evaluation, no reason existed for denial of the Seminary’s application nor did a reason exist for further delaying a decision”; that “[m]embers of the Board of Regents had on numerous occasions discussed and expressed concern over various non-academic questions, including an alleged association between the leaders of the Unification Church and the Korean Central Intelligence Agency, alleged deceptive practices of the Unification Church, alleged brainwashing techniques employed by the Unification Church”; that “the Board of Regents have chartered institutions with greater deficiencies and/or fewer strengths than the Seminary possesses”; that “the Seminary has been subjected to greater scrutiny and has been held to higher requirements than other applicants for a Provisional Charter”; that “the Board of Regents has never before delayed a decision for an application for Provisional Charter for such an extended period of time when its consultants, staff and counsel recommended approval”: that “[o]ne of the reasons stated as a ground for denial was the lack of demonstration of necessary financial resources * * * [based on the] failure to submit audited financial statements”; and that “ [i] n my over twenty-five years with the State Education Department the submission of an audited financial statement by a sponsoring entity was never a requirement to demonstrate adequate financial resources of the applicant.”
Also tendered were excerpts from the journal of the *201 April, 1977 meeting of the Board of Regents which included the statement of Regent Griffith that “the Unification Church is a political arm of the South Korean government (which I consider to be totalitarian) and possibly of the South Korean CIA”, and that “I disapprove of the Church’s purposes and activities. So I must, in logic and conscience, reiterate my disapproval of the charter for the Church’s - seminary.”
There is an affidavit of David Sperling, who attended the April, 1977 meeting of the Board of Regents, attesting that Regent Yavner “accused the Unification Church and its leaders of engaging in ‘brainwashing’ ” and stated that “ ‘if proof is needed, we need time to get that proof’ ”. Sperling further attested that Yavner stated he had read the Divine Principle, which contains the religious beliefs of the Unification Church, and found it “dangerous”, analogizing it to Hitler’s Mein Kampf.
The significance of these statements in context is revealed in the statement of Regent Clark: “I am not satisfied that the questions raised and the reasons offered in support of the motion to delay action upon this application justify any delay. This body has granted temporary certification to other applicants in the past without raising these types of questions. In regard to this application, it is my personal belief that serious questions of discrimination, civil liberties and first amendment issues are at stake.”
The record also contains a copy of the March 22, 1977 Joint Resolution of the New York State Legislature directed to the Board of Regents memorializing them to delay action on petitioners’ application because “the Unification Church and its founder, Reverend Sun Myung Moon have made headlines recently for alleged sophisticated brainwashing techniques on young people luring them away from family and community ties.”
There was a letter to petitioners’ attorney from the counsel to the Board of Regents dated six days prior to the December, 1977 meeting of the Board of Regents revealing the existence of six letters and affidavits adverse to the Unification Church, some dated months earlier and all unsubstantiated, giving petitioners five days to respond.
*202 There was also an affidavit by the dean of the Unification Theological Seminary attesting that a Department of Education “review team” conducted an on-site inspection of the Seminary records on December 20, 1977 with almost no forewarning at a time when the school registrar and other staff familiar with the recordkeeping system were away for the holidays. *
Finally, there was proof that substantially all of the reasons ultimately articulated in the final report of the Regents recommending denial of petitioners’ application were developed in the last two months of the 34-month period of investigation and review, primarily from information garnered during the on-site inspection of December 20, 1977, and that prior to that time no reasons had been identified for denying the application.
This tender of proof in admissible form, although clearly subject to contravention and to explanation, denigration and even demolition as to probative significance, in the context of the undisputed facts that the application was initially submitted April 29, 1975, that in the course of the following 30 months of investigation the departmental reports were uniformly favorable to the application and no ground had been advanced to support its denial, and that it was not until after the hastily announced visitation of December 20, 1977 that articulable grounds were specified on which the application was denied, showed facts sufficient to require a trial as to whether the investigative procedures and decision-making process of the Board of Regents was infected with such bias, prejudice or predisposition to ultimate determination as to call for the vacatur of what would otherwise have been a rational determination by the administrative agency charged with responsibility therefor and vested generally with broad discretion in connection therewith. I would deny respondents’ motion for summary judgment seeking as it does to obviate the necessity for a full evidentiary hearing to which petitioners have demonstrated that they are entitled.

 An unidentified person at the Seminary had been contacted by telephone on December 19 at 4:30 p.m. by Dr. Tubbs of the Department of Education who stated that five staff members would arrive the following morning at 9:00 a.m. to conduct an inspection.